IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE CRAWFORD, | ) | CASE NO. 1:14 CV 1954 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN LAZAROFF, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Jermaine Crawford for a writ of habeas corpus under

28 U.S.C. § 2254.[2]  After a bench trial in Cuyahoga County Court of Common Pleas in

2012,[3] the judge convicted him of the lesser included offense of felony murder and of

aggravated robbery.[4] He presently serves a sentence of imprisonment of fifteen years to life,

plus two years for a repeat violent offender specification, and three years for a firearms

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge
Benita Y. Pearson by non-document order dated September 24, 2014.

[2] ECF # 1; *see* 28 U.S.C. 2254 (2012).

[3] ECF # 7, Attachment at 142.

[4] ECF # 7, Attachment at 252.

specification, for an aggregate sentence of twenty years to life.[5]  He is currently incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio.[6]

Crawford raises four grounds for habeas relief in his petition.[7]  The State, in its return of the writ, contends that ground one is without merit and should be denied.[8]  The State argues that grounds two, three, and four should be dismissed as procedurally defaulted.[9]  In the alternative, the State argues that grounds two, three, and four should be dismissed as non-cognizable state law claims.[10]  For the reasons that follow, I will recommend Crawford's petition be denied in part and dismissed in part.

## Facts

### A.    Underlying facts, conviction, and sentence

The relevant facts underlying this matter were found by the state appeals court.[11]

---

[5] *Id*. at 354.

[6] ECF # 1.

[7] *Id.*

[8] ECF # 7 at 21-23.

[9] *Id.* at 12-15.

[10] *Id.* at 15-21.

[11] ECF # 7, Attachment at 354.

Navario Banks was shot and killed in his Warrensville Heights apartment on March 6, 2011.[12]  Crawford along with Jadell Vanhorn, James Cassel, and Duane Robinson were indicted in connection to the killing.[13]

Banks's ex-girlfriend, Cashey Moorer, testified that she had broken up with Banks just before his death because he was a drug dealer.[14]  Moorer stated that Banks lived with Christopher Grimes.[15]  She did not recognize photos in court of Robinson, Cassel, or Crawford, but said she recognized Vanhorn as someone Banks knew through Grimes.[16]

On the night that Banks was killed, Moorer spoke to him on the phone several times.[17] Banks told her that he was going to have people coming to his house that night.[18]  The last time that she talked to Banks they were "cut off."[19]  She stated that she tried to call him back until 2:00 a.m. because she didn't trust the people he spoke to.[20]

---

[12] *Id*. at 357.

[13] *Id.* at 356.

[14] *Id.* at 358.

[15] *Id.*

[16] *Id*.

[17] *Id*.

[18] *Id.*

[19] *Id.*

[20] *Id*.

On March 7, 2011, Warrensville Heights police were alerted to the crime when Grimes pulled into a gas station honking his horn.[21]  Grimes appeared to be upset, and after speaking with him, the officer radioed for other officers to go to Banks's apartment.[22]  When officers arrived at the apartment, they did not see signs of forced entry, although they stated that the apartment looked like it was "ransacked."[23]  They found Banks dead in an upstairs bedroom with a single, fatal gunshot wound to the back of his head, later determined to have been fired from a 9mm pistol that was never recovered.[24]  The police did, however, recover a single 9mm bullet casing close to where Banks was found.[25]

The investigating officers found "numerous firearms, drug paraphernalia, and drugs" in the apartment.[26]  They found marijuana hidden in places that were not "readily observable," such as underneath a couch and "under the upstairs steps."[27]

Additionally, the police found a bag for a Mossberg shotgun containing all of the paperwork and documentation for it, but not the actual gun.[28]

---

[21] *Id*.

[22] *Id*. at 359.

[23] *Id.*

[24] *Id*. at 357, 359-60.

[25] *Id.* at 360.

[26] *Id.* at 359.

[27] *Id.*

[28] *Id.*

-4-

Using Banks's cell phone, investigators developed Vanhorn, Cassel, Robinson, and Crawford as suspects.[29]  Police found a Mossberg shotgun and a "military green" carrying case in Vanhorn's apartment incident to his arrest on March 16, 2011.[30]  Cassel was arrested the same day.[31]  Robinson was arrested on March 23, 2011 and provided police with a contemporaneous statement.[32]  Crawford was arrested on June 17, 2011.[33]

Robinson and Cassel agreed to testify against Crawford in exchange for pleading guilty to lesser charges,[34] both offering similar testimony about what happened on  March 6, 2011 prior to arriving at Banks's apartment.[35]  Crawford and Cassel, who are brothers, borrowed a car that their mother rented.[36]  Cassel called Robinson to drive because neither of the brothers had a driver's license.[37]  Both testified that they intended to purchase marijuana the night of March 6.[38]  The three men picked up Vanhorn from his apartment.[39]

---

[29] *Id.* at 360.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 360-61.

[36] *Id.* at 361.

[37] *Id.*

[38] *Id.*

[39] *Id.*

Robinson testified that Vanhorn gave him directions to Banks's apartment where they could then buy marijuana.[40]

Robinson's and Cassel's testimony differs as to what happened after they got to Banks's apartment.[41]  According to Robinson, Vanhorn and Crawford went inside while he and Cassel remained in the car.[42]  He testified that he gave Vanhorn $100 to use to buy marijuana from someone in the apartment.[43]  He said that he did not see any guns in the vehicle before they reached Banks's apartment.[44]  He also stated that neither Vanhorn nor Crawford were carrying anything when they went in the apartment.[45]

While waiting with Cassel in the car for Crawford and Vanhorn to return, Robinson said he heard a gunshot.[46]  He said that he didn't know where Crawford and Vanhorn were at the time of the gunshot because he was not paying attention.[47]

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at 362.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

He testified that he did not notice if Crawford or Vanhorn had anything with them when they got back into the car because he did not look at them.[48]  Robinson then contradicted himself and said that he *did* look at Vanhorn when he was coming back to the car, and that Vanhorn was not carrying anything.[49]  Robinson contradicted himself again, stating that he did not see if Vanhorn was carrying anything as he "wasn't looking at him period, " and included that he did not look at Crawford either. [50]

Robinson could not say how long Vanhorn and Crawford were in Banks's apartment.[51] He said that Vanhorn gave both Cassel and himself marijuana when he got back in the car, but did not give any to Crawford.[52]

Robinson said that the four of them left Banks's apartment and went to an apartment at Garden Valley in the Kinsman neighborhood of Cleveland.[53]  He said he could not remember if he talked to anyone about the gunshot he heard when they were all back in the

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at 363.

car,[54] although he did testify that Vanhorn told them that he shot the person in the apartment.[55]

Robinson said he saw the Mossberg shotgun, but only after the four got out of the car at Garden Valley,[56] and denied ever seeing the green case or lock boxes.[57]  Robinson said that after that he left the other three men and walked home.[58]

Because Robinson's in-court testimony and his previous statement to the police were inconsistent, the State asked the court to declare Robinson a hostile witness.[59]  Over Crawford's objection, the court permitted the State to treat Robinson as hostile.[60]  Robinson then testified that he recalled Crawford asking "why did the person get shot?"[61]  Robinson agreed that he previously told the police that Crawford was upset because he did not know that Vanhorn was going to shoot the guy.[62]

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 364.

[60] *Id.*

[61] *Id.* at 365.

[62] *Id.*

Initially, Cassel's testimony about what happened after they arrived at Banks's apartment was inconsistent with Robinson's.  He maintained that his brother, Crawford, did not go with Vanhorn into the apartment.[63]  The prosecutor then requested that Cassel be treated as a court's witness.[64]  Cassel conferred with his attorney and then changed his testimony, stating that Crawford did in fact enter the apartment with Vanhorn.[65]

Cassel then explained the sequence of events:  First Crawford came out of the apartment, Cassel then heard a gunshot, and finally Vanhorn came out of the apartment.[66]  Cassel said Crawford was near the car when he heard the gunshot,[67] but could not recall if Crawford was carrying anything.[68]  When asked whether Vanhorn was carrying anything out of the apartment, Cassel replied, "[p]retty not too much sure, but when he was in the car, I seen a little black gun hanging out of his pocket and a bag of marijuana."[69]

The court permitted Cassel to view the video statement that he provided the State on September 26, 2011, two days before he entered his guilty plea, to refresh his memory about what he previously said Crawford was carrying out of the apartment, although not in the

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

-9-

presence of the court.[70] After watching the video, Cassel repeatedly denied remembering that Crawford carried anything out of the apartment.[71]   The State asked Cassel whether his previous statement was true, to which he replied, "maybe, maybe not."[72] He further testified that his video statement was not accurate,[73] and denied that his memory was faulty due to the presence of his brother and other family members.[74]

Cassel testified that after they left the apartment, he thought he heard Vanhorn say he shot the guy inside,[75] and agreed that all four men were in the car when Vanhorn said it.[76] He said that they all went to a girl's apartment at Garden Valley after leaving Banks's apartment.[77]

Cassel stated that Vanhorn offered to give him marijuana in exchange for opening a lock box.[78]  Cassel agreed, obtained the necessary tools, and opened the box.[79]  He testified that he did not know where Vanhorn got the lock box, and that the first time he saw it was

---

[70] *Id.* at 365-366.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.* at 367.

[79] *Id.*

when they got out of the car at the Garden Valley apartment.[80]  Cassel said that this was also

when he first saw that Vanhorn had the shotgun case,[81] describing it as having an "army

fatigue" color.[82]  Cassel did not identify the gun or case in court.[83]

Cassel testified that he then opened a second lock box for Vanhorn in the girl's

apartment.[84]  He said Vanhorn threw both lock boxes in the garbage when they left the

Garden Valley apartment.[85]  Cassel agreed that all four men got back into the car and drove

Vanhorn home.[86]

The court admitted cell phone records into evidence over Crawford's objection, but

it did not admit the text messages.[87]  The phone records showed that Crawford called both

Robinson and Vanhorn numerous times throughout the evening Banks was killed.[88]  Those

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *Id.* at 368.

records also showed that Vanhorn called Banks twice that night,[89] and that Banks called 911 approximately three minutes after the second call from Vanhorn.[90]

At the close of the State's case, Crawford moved for acquittal pursuant to Ohio Criminal Rule 29.[91]  The court granted his motion with respect to Counts 1, 4, 9, and 10, but denied it with respect to all of the other counts.[92]

The court found Crawford guilty of aggravated robbery "consisting of theft using a deadly weapon," with the firearm, notice of prior conviction, and repeat violent offender specifications, and the lesser-included offense of Count 3, felony murder, with the same specifications.[93]  The trial court found Crawford not guilty of the remaining counts.[94]

---

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93]  The state court of appeals remanded the case to the trial court to address a clerical error in the sentencing entry to reflect that Crawford was found guilty of count 3 felony murder, not count 2 felony murder.  *Id*. at 354.

[94] *Id.* at 369.

B.      **Direct Appeal**

*1.*      ***Ohio Court of Appeals***

Crawford, through counsel, filed a timely[95] notice of appeal with the Eight District

Court of Appeals in Cuyahoga County.[96]  He amended his appeal to include the trial court's

denial of his motion to suppress and its denial of his motion for a new trial and/or judgment

of acquittal.[97]  In his brief, Crawford raised the following six (6) assignments of error:

> 1.      The trial court erred by denying appellant's motion for a new trial and/or judgment of acquittal.
>
> 2.      The trial court erred when it denied appellant's motion for acquittal under Crim. R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
>
> 3.      Appellant's conviction under count 2 was improper.
>
> 4.      Appellant was denied a fair trial when the trial court allowed inadmissable evidence to be introduced at trial and considered inadmissable evidence in rendering its verdict.
>
> 5.      The trial court erred by denying appellant's motion to suppress.

----

[95]  Under Ohio R. App. P. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed.  *See Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case).  Crawford's conviction and sentence were journalized on June 14, 2012, and his appeal to the Ohio court of appeals was filed on June 26, 2012.  ECF # 7, Attachment at 251-54.

[96]  ECF # 7, Attachment at 254.

[97]  *Id*. at 256.

> 6.  Appellant's convictions are against the manifest weight
>     of the evidence.

The State filed its brief in response.[98]  The state court of appeals overruled all Crawford's assignments of error and affirmed the trial court decision.[99]

### 2.  *Supreme Court of Ohio*

Crawford, *pro se*, thereupon filed a timely[100] notice of appeal with the Supreme Court of Ohio, [101] appealing the April 25, 2013 journal entry.[102]  In his memorandum in support of jurisdiction, he raised one (1) proposition of law:

> 1.  When a trial court allows inadmissable evidence to be considered in
>     rendering a verdict, and there is insufficient evidence to establish
>     beyond a reasonable doubt each element necessary to support the
>     conviction, defendant is denied his sixth and fourteenth amendment
>     rights by the Ohio State Constitution.

––––––––––––––––––

[98] *Id*. at 301.

[99] *Id*. at 354.

[100]  *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a  notice of appeal must be filed within forty-five days of entry of the appellate judgment for which review is sought.); *See also, Applegarth v. Warden*, 377 F.Appx. 448, 450 (6th Cir.2010) (discussing forty-five day limit) (unreported case).  Here, the appellate judgment was entered on April 25, 2013, and the notice of appeal filed in the Supreme Court of Ohio on June 4, 2013.

[101] ECF # 7, Attachment at 393.

[102] *Id.* at 354.

The state filed a waiver of memorandum in response.[103]  On September 4, 2013, the Supreme

Court of Ohio declined jurisdiction over the appeal pursuant to Rule 7.08(B)(4) of its Rules

of Practice.[104]

## C.      Federal Habeas Petition

On September 3, 2014, Crawford, *pro se*, timely filed[105] a federal petition for habeas

relief.[106]  In it Crawford raises the following four (4) grounds for relief:

> GROUND ONE:          The trial court erred when it denied Appellant's motion
> for acquittal under Crim.R. 29 because the state failed to
> present sufficient evidence to establish beyond a
> reasonable doubt the elements necessary to support the
> convictions.
>
> GROUND TWO:          The trial court erred by denying Appellant's motions for
> a new trial and/or judgment of acquittal.
>
> GROUND THREE:  Appellant was denied a fair trial when the trial courts
> allowed inadmissable evidence to be introduced at trial
> and consider inadmissable evidence in rendering its
> verdict.
>
> GROUND FOUR:        Appellant's conviction under count 2 was improper.[107]

---

[103] *Id.* at 460.

[104] *Id.* at 443.

[105] The present petition for federal habeas relief was filed on September 3, 2014.  ECF # 1.  As such, it was filed within one year of the conclusion of Crawford's direct appeal in the Ohio courts and so it is timely under 28 U.S.C. § 2254(d)(1).

[106] ECF # 1.

[107] *Id.*

# Analysis

**A.     Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Crawford is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition.  Thus, he meets the "in custody" requirement of the federal habeas statute vesting this court with jurisdiction over the petition.[108]

2.      There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[109]

3.      In addition, Crawford states,[110] and my own review of the docket of this court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[111]

4.      Moreover, subject to the procedural default arguments raised by the State, it appears that one of Crawford's claims has been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[112]

---

[108] *See* 28 U.S.C. § 2254(a) (2012); *see Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[109] *See* 28 U.S.C. § 2254(d)(1) (2012); *see Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th  Cir. 2000).

[110] ECF # 1 at 2.

[111] *See* 28 U.S.C. § 2254(b) (2012); *see In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[112] *See* 28 U.S.C. § 2254(b) (2012); *see Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sul,livan v. Boerckel*, 526 U.S. 838, 842 (1999).

5.      Finally, Crawford has not requested appointment of counsel,[113] nor has he requested an evidentiary hearing to develop the factual basis of his claims.[114]

## B.      Standards of review

### 1.      *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to federal habeas review.[115]  Such a claim is subject to procedural default if a petitioner failed to raise it when state court remedies were still available.[116]

The Supreme Court has made it clear that a habeas petitioner must afford state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[117]  This requires a petitioner to go through "one complete round" of the state's appellate review process,[118] presenting his or her claim to "*each* appropriate state court."[119]  A petitioner may not seek habeas relief then if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[120]

_____

[113] *See* 28 U.S.C. § 2254(h) (2012); *see* Rule 8(c), Rules Governing 2254 Cases.

[114] *See* 28 U.S.C. § 2254(e)(2) (2012).

[115]  *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[116]  *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[117] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[118] *Boerckel*, 526 U.S. at 845.

[119] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[120]  *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted).

-17-

When a state asserts that a violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part test to determine whether the claim is procedurally defaulted.[121] A petitioner's violation of a state procedural rule will bar federal review if that rule satisfies the standards set out in that test:[122]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[123]

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[124]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[125] that is both 'firmly established and regularly followed.'"[126]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[127]

---

[121] *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *see Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[122] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[123] *Id.* (citing *Maupin*, 785 F.2d at 138).

[124] *Id.*

[125] *Id.* (quoting *Maupin*, 785 F.2d at 138) ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

[126] *Id.* (citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2001) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

[127] *Id.* (quoting *Coleman*, 501 U.S. at 750).

-18-

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[128]  In order to show "prejudice" for the default, the petitioner must show that the errors at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[129]

Additionally, "a credible showing of actual innocence" may excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[130]

## 2. *AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[131] codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

---

[128] *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[129] *Id.* (quoting *United States v. Frady*, 456 U.S. 298, 327 (1982) (emphasis in original).

[130] *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

[131] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

-19-

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[132]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[133] and "difficult to meet,"[134] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[135]

### a. "Contrary to" or "unreasonable application of" clearly established federal law

Under § 2254(d)(1), "clearly established [f]ederal law" includes only Supreme Court holdings and does not include dicta.[136] There are two ways that a state court decision can be "contrary to" clearly established federal law:[137] (1) where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[138] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[139] A state court's decision does not rise

─────────────────────

[132] 28 U.S.C. § 2254(d) (2012).

[133] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[134] *Id.* (citation omitted).

[135] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[136] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[137] *Brumfield v. Cain*, 135 S.Ct. 2269, 2289 (2015).

[138] *Id.*

[139] *Id.*

to the level of being "contrary to" clearly established federal law simply because that court did not specifically cite the Supreme Court.[140]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[141]

Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[142]  Where no such Supreme Court holding exists, the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[143]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[144]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[145]

---

[140] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[141] *Id.*

[142] *See id.*

[143] *Woodall*, 134 S.Ct. at 1699 (quoting *Williams*, 529 U.S. at 407).

[144] *Id.* at 1702 (quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003)).

[145] *Id.*

To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[146]  Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.  Where the state court application is not unreasonable however, the federal habeas court must deny the petition.

**b.      "Unreasonable Determination" of the Facts.**

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[147]  Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[148] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[149] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review"or "by definition preclude relief,"[150] it is indeed a difficult

---

[146] *Id.* (quoting *Richter*, 562 U.S. at 103).

[147]  *Brumfield*, 135 S.Ct. at 2277.

[148] 28 U.S.C. § 2254(e)(1) (2012).

[149]  *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[150]  *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does

standard to meet. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[151]

## C.     Application of Standards

*1.     Grounds two, three, and four - Alleging that the trial court erred when it denied Crawford's motions for a new trial and judgment of acquittal, that Crawford was denied a fair trial when the trial court allowed inadmissible evidence to be introduced and considered when rendering its verdict, and that Crawford's conviction under Count 2 was improper, respectively, should all be dismissed as procedurally defaulted.*

Grounds two, three, and four, alleging the trial court erred in denying Crawford's motions for new trial and judgment of acquittal, alleging denial of a fair trial because the trial court considered inadmissible evidence, and alleging Crawford's conviction under Count 2 was improper, should be dismissed as procedurally defaulted because he did not exhaust these claims at the state court level, and because doing so now is barred by the doctrine of *res judicata*.[152]

While Crawford brought the substance of all four grounds before the state court of appeals,[153] he did not present the issues in grounds two through four to the state supreme

_____

not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

   [151] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

   [152] *See Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003) (stating *res judicata* is an adequate and independent state ground that forecloses habeas review).

   [153] ECF # 7, Attachment at 356.

-23-

court.[154]  His memorandum in support of jurisdiction to that court contained only a single proposition of law,[155] namely, the claim he now raises in his first ground.[156]

The State argues that since Crawford did not bring grounds two, three, and four before the Supreme Court of Ohio initially, that the Ohio doctrine of *res judicata*[157] bars him from asserting them now.[158]  Under Ohio law, "any issue that could have been raised on direct appeal and was not is *res judicata* and not subject to review in subsequent proceedings."[159] This doctrine bars any issue that should or could have been brought in a previous action from being relitigated now.[160]

Crawford did not give the state supreme court the opportunity to evaluate the claims he asserts in grounds two, three, and four, regardless of the fact that the court declined jurisdiction over the substance of ground one.  Thus, he did not present those claims through "one complete round" of Ohio's appellate review process.[161]

---

[154] *See id.* at 396-403.

[155] *Id.*

[156] ECF # 1 at 5.

[157] *See State v. Perry*, 180 N.E.2d 104 (Ohio 1967).

[158] ECF # 7 at 14.

[159] *State v. Saxon*, 846 N.E.2d 824, 829 (Ohio 2006) (citations omitted).

[160] *See Gargallo v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 918 F.2d 658, 660-61 (6th Cir. 1990).

[161] *See Boerckel*, 526 U.S. at 845.

Because Crawford did not present grounds two through four to "*each* appropriate state court,"[162] at the appropriate time, and because the Supreme Court of Ohio does not permit delayed appeals for post-conviction petitions,[163] Crawford would be procedurally barred from bringing these claims in state court.  As such, he is procedurally barred from pursuing these claims in federal court.

Crawford has made no attempt to cure his procedurally defaulted claims.  He has not demonstrated either cause or prejudice for his default.[164]  He has presented no evidence or argument showing "an objective factor external to the defense" that hindered his compliance with the state procedural rule.[165]  And he has not demonstrated that his trial was infected with an error of constitutional magnitude.[166]

---

[162] *See Reese*, 541 U.S. at 29 (emphasis added).

[163] S.Ct.Prac.R. 7.01(A)(4)(c) ("The Clerk shall refuse to file motions for delayed appeal involving post-conviction relief . . . ."); *Lopez v. Wilson*, 426 F.3d 339, 344 (6th Cir. 2005).

[164] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (explicitly barring claims absent demonstration of cause for default, prejudice from alleged violation, or that failure to consider claim will result in a fundamental miscarriage of justice).

[165] *See Carrier*, 477 U.S. at 488.

[166] *See Frady*, 456 U.S. at 169.

Additionally, Crawford has made no credible claim of actual innocence.[167] He has not provided new evidence showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."[168]

Accordingly then, grounds two, three, and four should be dismissed as procedurally defaulted.

**2.** ***Ground one - Alleging that the trial court erred when it denied Crawford's motion for acquittal under Criminal Rule 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions - should be denied after AEDPA review because the state appeals court's decision was not an unreasonable application of the clearly established federal law in* Jackson v. Virginia.**

Ground one, alleging insufficient evidence for conviction should be denied after AEDPA review because the state appeals court's rejection of his claim was not an unreasonable application of *Jackson v. Virginia.*[169]

The state court of appeals began its inquiry into whether the State presented sufficient evidence for convicting Crawford of aggravated robbery and felony murder by stating the standard it would use to review this assignment of error: "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

---

[167] *See Schulp*, 513 U.S. at 324.

[168] *See House v. Bell*, 547 U.S. 518, 537 (2006).

[169] 443 U.S. 307 (1979).

doubt."[170]  The court quoted the definition of aggravated robbery in the Ohio Revised

Code.[171]  The court then quoted the definition of felony murder in the Ohio Revised Code,[172]

and cited the State's theory of complicity.[173]  The court cited *State v. Jenks*[174] for the

proposition that complicity can be proved by circumstantial evidence.[175]

The court then stated that after "[v]iewing the evidence in a light most favorable to

the [S]tate, it presented evidence, albeit circumstantially, establishing that Crawford aided

and abetted Vanhorn in robbing Banks."[176]  The court found that both Robinson's and

----

[170] ECF # 7, Attachment at 380 (quoting *State v. Leonard*, 818 N.E.2d 229, 252 (Ohio 2004)).

[171] *Id.*; R.C. 2911.01(A)(1)

No person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall . . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . . .

[172] ECF # 7, Attachment at 380; R.C. 2903.02(B) ("No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . .").

[173] ECF # 7, Attachment at 380-81 ("[U]nder [the definition of complicity in the Ohio Revised Code], the [S]tate also had to present sufficient evidence that Crawford acted 'with the kind of culpability required for the commission of an offense' by aiding or abetting another in committing the offense.") (quoting R.C. 2923.03(A)(2)).

[174] 574 N.E.2d 492 (Ohio 1991).

[175] ECF # 7, Attachment at 381.

[176] *Id.* at 382.

Cassel's testimony established that Crawford was the person who knew Vanhorn,[177] that Crawford had communicated with Vanhorn via cell phone several times prior to getting together on the night in question,[178] that Crawford gave Robinson directions to Vanhorn's house,[179] and that Vanhorn called Banks twice, just before Banks called 911.[180]

The court of appeals found that the evidence further established Crawford and Vanhorn's entry into Banks's apartment together,[181] and that Vanhorn shot Banks during that time.[182] The court found the purported dispute as to whether Crawford was actually in the apartment with Vanhorn during the murder as irrelevant because "for purposes of felony murder . . . Banks died as a result of the aggravated robbery that Crawford aided and abetted Vanhorn in committing.[183]  The court stated that both the events that led up to the murder, and the fact that Crawford, Robinson, and Cassel all remained in the car after Vanhorn told them that he had shot Banks,  establish that the acts were part of the plan to rob Banks.[184]

---

[177] *Id.*

[178] *Id.*

[179] *Id.*

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] *Id.*

[184] *Id.* at 382-83.

The court of appeals also stated that the evidence presented, if believed, also showed that either Crawford or Vanhorn carried two lock boxes and a green case containing a Mossberg shotgun out of Banks's apartment.[185]  The court stated that it could be inferred circumstantially that Vanhorn had those items in his possession because they were present upon arrival at the Garden Valley apartment and both Cassel and Robinson stated those items were not in the car prior to arriving at Banks's apartment.[186]

With regard to drugs, the court stated that Vanhorn got marijuana from Banks's apartment because he gave it to Robinson and Cassel when he returned to the car.[187]  The court inferred that Vanhorn stole the marijuana from Banks because the $100 that Robinson said that he gave to Vanhorn for the purpose of buying marijuana was not found by the police.[188]  The court found that it was not important that not all of the marijuana, i.e. the concealed marijuana was not taken from the apartment.[189]

The court looked at these facts in a light most favorable to the prosecution and found it was sufficient to establish that Crawford aided and abetted Vanhorn in robbing Banks, and

---

[185] *Id.* at 383.

[186] *Id.*

[187] *Id.*

[188] *Id.*

[189] *Id.*

because Banks died as a result of the aggravated robbery, that the State presented sufficient evidence to establish that Crawford committed felony murder via complicity.[190]

In light of *Jackson* and AEDPA then, the state court of appeals finding that Crawford's conviction was properly based on the evidence  presented at trial, was not an unreasonable application of *Jackson*.  Accordingly, I recommend that ground one be denied after AEDPA review.

## Conclusion

For the foregoing reasons, I recommend that the petition of Jermaine Crawford for a writ of habeas corpus be dismissed in part and denied in part.


Dated: January 14, 2016                                  s/ William H. Baughman, Jr.
                                                                      United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[191]

---

[190] *Id.* at 384.

[191] *See Thomas v. Arn*, 474 U.S. 140 (1985); *see United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-30-